IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KATHLEEN F.,[1]                                         No. 6:20-cv-00930-HZ

          Plaintiff,                              OPINION & ORDER

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

          Defendant.

Katherine L. Eitenmiller
HARDER, WELLS, BARON & MANNING, P.C.
474 Willamette Street
Eugene, OR 97401

    Attorney for Plaintiff

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Christopher J. Brackett
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Kathleen F. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB on April 2, 2016, alleging an onset date of February 14, 2015. Tr. 10.[2] Plaintiff's date last insured ("DLI") is June 30, 2020. Tr. 12. Her application was denied initially and on reconsideration. Tr 10.

On May 6, 2019, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 23. On May 30, 2019, the ALJ found Plaintiff not disabled. Tr. 17. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on "deep vein thrombosis, venous stasis ulcers (both feet/ankles), knee joint pain (both knees), [and] hypertension." Tr. 185. At the time of her alleged onset date, she was 58 years old. Tr. 70. She has high school education and past relevant work experience a hardware salesperson. Tr. 16, 186.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 10.

**SEQUENTIAL DISABILITY EVALUATION**

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to

3 – OPINION & ORDER

the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her alleged onset date. Tr. 12. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "deep vein thrombosis/venous insufficiency; osteoarthritis and degenerative joint disease – knees – bilateral; bilateral ankles – dependent rubor with scarring." Tr. 12. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 13. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) with the following limitations: "The claimant can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. The claimant can occasionally stoop, kneel, crouch, and crawl." Tr. 13. Because of these limitations, the ALJ concluded that Plaintiff could perform her past relevant work as a hardware salesperson. Tr. 16. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 17.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) improperly rejecting Plaintiff's subjective symptom testimony; (2) improperly rejecting the medical opinion of David DeHaas, MD; (3) improperly rejecting the other medical source statement of Lauren Bell, PA; and (4) improperly rejecting the lay witness testimony of Plaintiff's spouse, daughter, and former coworker. The Court disagrees.

**I.    Subjective Symptom Testimony**

Plaintiff first argues that the ALJ erred in rejecting Plaintiff's subjective symptom testimony. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he

5 – OPINION & ORDER

complains, an adverse credibility finding must be based on clear and convincing reasons") (quotation marks and citation omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ engages in a two-step analysis for subjective symptom evaluation: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (quotation marks and citations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Plaintiff worked for 36 years at a hardware store. Tr. 30–32. She did various tasks in this position, including directing customers to items, working as a cashier, assisting with orders, stocking shelves, and opening the store. Tr. 30–31. Her long-term employer would let her put her feet up and sit on a stool even with customers in the store. Tr. 32. But when the store was sold in 2014, she was unable to continue working because the new owners would not accommodate her.

Tr. 32. The new owners also increased her working hours from three days a week. Tr. 39–40. She tried to work at another hardware store, but she could not sit down and was unable to continue working after a few days. Tr. 33, 40. At the time of the hearing, she would occasionally work part-time as a ballot sorter because she could sit and stand as needed. Tr. 34.

Her blood clotting disorder and knee condition limit her day-to-day activities. Plaintiff has had DVT since 1981 and knee issues since 2005, which have gotten worse as she has gotten older. Tr. 38. Blood pools in her ankles when she sits or stands for long periods of time and causes painful ulcers. Tr. 35. She can only stand for five minutes without pain and sit for five or ten minutes without pain. Tr. 35–36. She can walk short distances, but walking miles is painful. Tr. 35. Her gait is "knock-kneed" because of her knee condition. Tr. 37. To manage her condition, she has to elevate her legs in a recliner at least five times a day. Tr. 36. On days where she can sit with her legs up most of the day, she feels really good. Tr. 36. The most she can carry is a seven-pound jug from the store to the car. Tr. 36–37. She does not bother lifting more than that because it puts pressure put on her legs, making her uncomfortable. Tr. 37. Plaintiff also struggles with squatting, bending, reaching, kneeling, climbing stairs, and completing tasks. Tr. 216.

Plaintiff testified that she watches her granddaughter one day a week, and her husband is usually around while Plaintiff babysits. Tr. 37–38. She has canceled in the past because of her health issues. Tr. 38. Plaintiff drives about twenty minutes to a Kiwanis meeting every week. Tr. 29–30, 40. She is in pain when she gets out of the car. Tr. 40. For exercise, she walks to and from her mailbox about a block away, which causes pain. Tr. 41. Plaintiff cooks dinner every day, which takes anywhere from thirty minutes to one and a half hours. Tr. 213. Plaintiff cleans, does laundry, and mows the lawn when needed. Tr. 214. She goes outside as often as possible

and grocery shops. Tr. 214. Plaintiff spends her free time growing house plants, gardening, and doing word puzzles. Tr. 215. She cannot do these activities as long as she used to. Tr. 215.

The ALJ gave three reasons for discounting Plaintiff's subjective symptom testimony: (1) Plaintiff's activities of daily living; (2) Plaintiff's conservative treatment; and (3) lack of support from the objective medical evidence. Tr. 14–15. Though the ALJ erred in discounting Plaintiff's testimony due to lack of support from the objective medical evidence, the other reasons identified by the ALJ are clear, convincing, and supported by substantial evidence. Thus, the ALJ did not err in discounting Plaintiff's subjective symptom testimony.

    A.    Activities of Daily Living

Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). There are two grounds for using daily activities to form the basis of an adverse credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), and "the mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping . . . does not in any way detract from his credibility," *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (citing *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). In order to impact a claimant's credibility, the activity has to be "inconsistent with claimant's claimed limitations." *Reddick*, 157 F.3d at 722. The ALJ cannot mischaracterize statements and documents in the record or take these out of context to reach his conclusion on the claimant's credibility. *Id.* at 722–23.

The ALJ found that the alleged severity of symptoms was inconsistent with Plaintiff's reported activities of daily living. Specifically, the ALJ identified Plaintiff's statements that she takes care of her two-and-a-half-year-old granddaughter and engages in various chores around the house. Tr. 15. The ALJ also noted Plaintiff's reports to providers that she exercises regularly and that she can walk "without difficulty and without any significant instability." Tr. 14–15.

The ALJ's findings are supported by substantial evidence. Plaintiff's reported limitations conflict with the activities she reported in her function report and to her medical providers. For example, Plaintiff stated that she would do the dishes, do laundry, clean her house, mow the lawn, and water her plants indoors and outdoors. Tr. 212, 214–215. She cooks dinner—a "meat, potatoes-veg kind of meal"—daily, which takes thirty minutes to an hour and a half. Tr. 213. She bakes some days. Tr. 212. She also watches her young grandchild once a week, which entails feeding her, playing with or entertaining her grandchild, and changing her diaper Tr. 37–38, 212, 438 (reporting to a provider that she has trouble getting on the ground with her grandchild and has to wear knee pads). Though she testified her husband is home with her when she watches her grandchild, there is no suggestion in the record that he helps her with this task. Indeed, she wrote in her function report that she also cares for her husband by cooking, cleaning, running errands, and doing his laundry. Tr. 212. These activities reasonably conflict with Plaintiff's testimony that she can only stand or walk for five minutes, sit for five minutes, and otherwise spend most of the day with her feet elevated. Tr. 35–36. Accordingly, the ALJ's reasoning was clear and convincing.

B.   Conservative Treatment

An unexplained or inadequately explained, failure to seek treatment or follow a prescribed course of treatment can be a basis to discount a claimant's symptom testimony. *Fair*

*v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Conservative treatment and failure to seek out treatment can be "powerful evidence regarding the extent to which [a claimant] is in pain." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). However, no adverse finding is warranted where a claimant has a good reason for failing to obtain treatment. *See Orn*, 495 F.3d at 638; *see also* SSR 16-3p, 2016 WL 1119029, at *8-9 (Commissioner will not find an individual's symptoms inconsistent with a lack of treatment without considering possible reasons, including inability to pay for treatment).

The ALJ found that Plaintiff's testimony is inconsistent with Plaintiff's course of conservative treatment. Tr. 15. The ALJ found that the treatment recommended by providers for her knees—including shoe inserts, losing weight, range of motion exercises, and strengthening exercises—was "conservative." Tr. 15. The ALJ also noted that Plaintiff has not shown interest in surgery. Tr. 15. Taken together, the ALJ concluded that these recommendations did not support Plaintiff's alleged need to elevate her legs frequently or avoid light work. Tr. 15.

The ALJ's reasoning in supported by substantial evidence. Plaintiff was recommended surgery by two specialists along with other treatment modalities, such as compression socks, for her venous stasis. Tr. 283 (DeHaas recommendation of endovascular ablation of veins), 354 (Viramontes recommending surgery). But Plaintiff has not pursued surgical treatment. And in one of her more recent appointments, Plaintiff explained that she was not interested in surgery because her "legs generally do not bother her except during acute events in the past." Tr. 354. In addition, at her more recent specialist appointments, her physician recommended a workup to determine whether Plaintiff had a clotting disorder that was contributing to her vascular condition. Tr. 354, 357, 359. Indeed, the physician stated that he has "no doubt that she is hypercoagulable given the fin[d]ings" from her ultrasound. Tr. 357. Plaintiff was reluctant. Tr.

357, 409 (noting she has not done the workup, declining referral to hematologist).[3] Plaintiff has not received much treatment for her knee pain, relying instead on ibuprofen, acetaminophen, and other conservative treatments like strength training, bracing, and shoe inserts. Tr. 340, 405, 421, 440. Plaintiff did not pursue steroid injections, which were discussed with her by multiple providers. Tr. 405, 440–41. Taken together, Plaintiff's disinterest in determining the cause of her venous condition and failure to take further steps to improve both her knee pain and DVT constitute a clear and convincing reason to discount Plaintiff's testimony. *Cf. Turner v. Berryhill*, No. 3:17-CV-00431-HZ, 2018 WL 1256481, at *8 (D. Or. Mar. 10, 2018) (holding that the ALJ's decision to discount a plaintiff's testimony due to conservative treatment was unreasonable when the plaintiff had undergone multiple interventional procedures to address her venous insufficiency; surgery was recommended only as a last resort; and the pain was bearable with the use of pain medication, compression stockings, and elevating her legs).

    C.    Lack of Support from the Objective Medical Evidence

The ALJ is instructed to consider objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Inconsistency between a claimant's testimony and the objective medical record is a valid reason to discount their testimony. *See Connett v. Barnhart*, 340 F.3d 871, 874

---

[3] Plaintiff argues that a lack of insurance and financial constraints were barriers to treatment. However, the record does not clearly support this statement. Plaintiff did voice some insurance and cost concerns to her vascular specialist, Tr. 355 (notes patient contemplating cost of hypercoagulable workup and provider offers to provide order sheet to have drawn at primary care provider's clinic), 357 (notes losing insurance in four months), but Plaintiff continued to receive care from her primary care provider and rheumatologist after these appointments and did not follow-up further with her vascular specialist or proceed with his recommended workup and treatment.

11 – OPINION & ORDER

(9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation conflicted with the medical record). And in some cases, the ALJ can discount claimant testimony when that testimony is not supported by the objective medical record. *See Batson v. Comm'r, Soc. Sec. Admin.,* 359 F.3d at 1196 (9th Cir. 2007) ("'Graphic and expansive' pain symptoms could not be explained on a physical basis" by claimant's physician); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (The ALJ could consider mild findings on MRIs and X-rays in discounting the plaintiff's testimony as to her back pain.). But "the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick,* 157 F.3d at 722.

The ALJ found that Plaintiff's allegations were not supported by the objective evidence. Tr. 14. The ALJ acknowledged evidence supporting Plaintiff's claims of osteoarthritis in Plaintiff's knees, atrophy in her legs, edema, varicosities, and associated limited range of motion and slow gait. Tr. 15. But the ALJ determined that "more frequently during examinations in the record the claimant presents with no/minimal edema or swelling, a normal to mildly limited range of motion, and a steady gait." Tr. 15.

The ALJ's finding is not supported by substantial evidence. Here, the objective evidence supports Plaintiff's testimony as to the severity of her venous condition. In 2015, when Plaintiff stopped working after two days at a new job, she had a doctor's appointment in which she reported significant pain after walking for two days at her job and was referred for a doppler ultrasound the next day to screen for DVT. Tr. 307–09. In chart notes, physicians document her chronic edema in her lower extremities and imaging showing extensive DVT. Tr. 281–83, 346, 359, 357. One specialist stated that imaging showed "one of the worst cases" of deep and superficial reflux he "[had] ever seen." Tr. 357. Similarly, imaging of her knees showed near

bone-on-bone contact and osteoarthritis with significant degenerative changes. Tr. 405, 440. Because the objective medical evidence overwhelmingly supports Plaintiff's allegations, this is not a clear or convincing reason for discounting Plaintiff's testimony.

## II.     Medical Opinion Evidence

Plaintiff argues that the ALJ erred in failing to discuss the opinion of David DeHaas, MD. Dr. DeHaas wrote a letter on behalf of Plaintiff on September 4, 2015. Dr. DeHaas indicated that Plaintiff has a "longstanding history of venous hypertension and deep and superficial venous incompetence of her lower extremities bilaterally." Tr. 280. According to Dr. DeHaas, Plaintiff's condition has involved ulcers in her lower extremities and intense leg cramping when she stands for a long period of time. Tr. 280. Dr. DeHaas recommended that this "be a consideration concerning her ability to work and stand for extended periods of time." Tr. 280.

There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of an examining physician over that of a reviewing physician. *Id*. If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may reject it only for clear and convincing reasons. *Id.*; *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006). Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn,* 495 F.3d at 632; *Widmark*, 454 F.3d at 1066. However, the ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

The ALJ errs when he rejects a medical opinion by ignoring it. *Garrison,* 759 F.3d at 1012–13. "The Secretary, however, need not discuss *all* evidence presented to her. Rather, she must explain why 'significant probative evidence has been rejected.'" *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir.1981)) (emphasis in original). Further, the harmless error analysis applies to the improper rejection of the opinion of a treating source. *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). In Social Security cases, errors are "harmless when they 'are inconsequential to the ultimately nondisability determination'" such that "'no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Id.* (quoting *Stout,* 454 F.2d at 1055–56).

Here, the ALJ erred by failing to address the letter from Dr. DeHaas because it included information about the nature and severity of Plaintiff's impairments, including symptoms and limitations due to her venous conditions. *See* 20 C.F.R. § 404.1527(a)(1). The error, however, was harmless. The only restriction identified by Dr. DeHaas was Plaintiff's inability to stand for extended periods of time due to ulcers and intense leg cramping. It is the ALJ's role to translate limitations in medical opinions into "concrete restrictions," *see Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008), and the light RFC here does not necessarily conflict with Dr. Haas's opinion, *see* 20 C.F.R. § 404.1567(b) ("[A] job is [light] when it requires a good deal of walking or standing, *or* when it involves sitting most of the time with some pushing and pulling of arm or leg controls." (emphasis added)); SSR 83-10, 1983 WL 31251 (light work can involve sitting most of the time or can involve a "good deal of walking or standing"; because light work requires frequent lifting, "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday"). Moreover, it is not an error for the

14 – OPINION & ORDER

ALJ to reject an opinion because it vague or lacks specific functional limitations, like Dr. DeHass's letter here. *See Samuel P. v. Comm'r of Soc. Sec.*, No. 20-5881, 2021 WL 5769404, at *6 (W.D. Wash. Dec. 6, 2021) ("[A] finding that a medical opinion does not contain specific functional limitations, or is otherwise too vague to be useful in making a determination, can serve as a valid reason for discounting that opinion (citing *Meanel v. Apfel*, 172 F.3d 1111, 1113–14 (9th Cir. 1999)); *Athanas v. Comm'r of Soc. Sec. Admin.*, No. CV-20-02292-PHX-MTL, 2021 WL 5578182, at *9 (D. Ariz. Nov. 30, 2021) (finding the ALJ was reasonable in affording a doctor's opinion little weight where the doctor concluded the plaintiff "would require 'some' instructions and that her mental condition presented 'some limitations'").

### III.  Other Medical Source

Plaintiff argues that the ALJ erred in giving limited weight to the opinion of Lauren Bell, PA. Bell completed a treating source statement regarding Plaintiff's conditions on February 21, 2019. Tr. 400. Bell saw Plaintiff twice before her evaluation. Tr. 400. She diagnosed Plaintiff with "HTN, prothrombic syndrome of LE, fatty liver disease, elevated liver enzymes, obesity, osteoarthritis knees B/L, anemia, dyslipidemia, and type 2 diabetes." Tr. 400. Bell described Plaintiff's signs and symptoms as knee pain, difficulty standing, the need to elevate her feet due to edema, blood clots, venous ulcers, osteophytes in her knees, and tilting of the patella. Tr. 401. Bell opined that Plaintiff would need to rest and lie down during the day for a half hour due to pain and swelling. Tr. 401. She also opined that Plaintiff can walk eight blocks without rest or significant pain, sit for sixty minutes at a time, stand or walk for ten minutes at a time, sit for a total of twenty minutes in an eight-hour workday, and stand or walk for ten minutes in an eight-hour workday. Tr. 402. According to Bell, Plaintiff would need a job which allowed her to shift positions at will and take unscheduled ten- or fifteen-minute breaks every half hour due to her

edema and pain. Tr. 402. Bell opined Plaintiff can never lift and would be off task 25% or more of the day. Tr. 403. She also stated that Plaintiff would miss more than four days of work per month due to her edema, ulcers, and pain. Tr. 404.

Physician Assistants are not considered acceptable medical sources. 20 C.F.R. § 404.1513(d)(1) (2013). Information from medical sources other than "acceptable medical sources" may provide insight into "the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939. The ALJ must consider several factors when evaluating the opinion of such sources, including: (1) length of relationship and frequency of contact; (2) consistency of opinion with other evidence; (3) quality of source's explanation for opinion; (4) any specialty or expertise related to impairment; and (5) any other factors tending to support or refute the opinion. *See* SSR 06-03p, 2006 WL 2329939; 20 C.F.R. § 404.1527(c)(2). Under Ninth Circuit law, evidence from "other sources" is considered under the same standard as that used to evaluate lay witness testimony, meaning the ALJ may reject it for reasons germane to the witness. *Molina*, 674 F.3d at 1111 (Because a physician's assistant was not an acceptable medical source, the ALJ could discount a physician's assistant's opinion for germane reasons).

The ALJ gave limited weight to the limitations described by Bell because of: (1) the short treating relationship between Plaintiff and Bell; (2) Plaintiff's regular exercise; and (3) Bell's failure to give a clear basis for the identified limitations. Tr. 15–16. At least two of these reasons are germane and supported by substantial evidence. First, Bell saw Plaintiff only twice in January 2019 before providing her treating source statement. Tr. 400. Though Plaintiff saw a different practitioner in the same practice before seeing Bell, these appointments were almost a year before Plaintiff saw Bell and limited to only two appointments. Tr. 425–433; *See Nichols v.*

16 – OPINION & ORDER

*Berryhill*, 722 F. App'x 650, 652 (9th Cir. Jan. 23, 2018) (noting that a short duration of contact with a non-acceptable medical source is a germane reason for rejecting their opinion); *Reed v. Colvin*, No. 6:15-cv001924-HZ, 2016 WL 6609179, *14 (D. Or. Nov. 8, 2016) (finding that the ALJ properly rejected the opinion of a non-acceptable medical source when it was issued after treating the plaintiff for a few months and after five visits). Second, Bell failed to provide context or support for at least some of the identified limitations, and the Court cannot find it in her medical records. For example, Bell stated that Plaintiff would miss more than four days of work per month and could not lift at all because of her conditions, but there is no support for these limitations in Bell's chart notes, which generally describe Plaintiff's health conditions, summarize her self-reported issues with standing and sitting, and note observations of atrophy and edema in her lower extremities. Tr. 413–424; SSR 06-10p, 2006 WL 2329939 (in considering opinions from other sources, the ALJ can consider "[h]ow well the source explains the opinion"); *cf. Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017) (finding that the rejection of an "other source" for using a check-box form was improper where the provider was the plaintiff's primary care provider who saw the plaintiff on a regular basis for more than two years). The ALJ therefore did not err in giving limited weight to Bell's opinion.

IV. **Lay Witness Testimony**

Plaintiff argues the ALJ erred in giving limited weight to lay witness statements from Plaintiff's husband, Plaintiff's daughter, and a former co-worker. All three witnesses provided letters in April 2019 in support of Plaintiff's claim for benefits. Tr. 267–69. All three observed that Plaintiff had a difficult time sitting or standing without pain and would require time to elevate her feet to alleviate the pain and swelling. Tr. 267–69. They described a significant

decrease in Plaintiff's mobility and functioning in recent years. Tr. 267–69. Her coworker also noticed difficulty lifting items. Tr. 269.

"Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." *Molina*, 674 F.3d at 1114 (citation omitted). The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine,* 574 F.3d at 694. The ALJ is not required, however, "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114. If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id*. Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122.

The ALJ gave some weight to the lay witness statements from Plaintiff's husband, Plaintiff's daughter, and a former co-worker. Tr. 16. The ALJ discounted their statements because they "do not appear to be supported by the objective medical evidence." Tr. 16. The ALJ also noted that the observations "lack sufficient specificity to provide clear insight into [her] limitation[s]" because they use phrases like "for any length of time" and "for a spell," which "diminishes the utility of the statements." Tr. 16.

The ALJ's reasoning is germane and supported by substantial evidence. None of the lay witnesses described specific restrictions, using instead the vague language described by the ALJ. Tr. 267–69; *cf. Meanel*, 172 F.3d at 1113–14 (where a treating physician's letter failed to explain the extent or significance of the plaintiff's "decreased concentration skills," the ALJ did not err

in rejecting his opinion). Further, the lay witness testimony does not describe any limitations beyond those described by Plaintiff, and the same reasons that were sufficient to discount Plaintiff's testimony—inconsistency with activities of daily living and course of conservative treatment—apply equally to the testimony of these lay witnesses. *See Molina*, 674 F.3d at 1123. Accordingly, the ALJ did not err.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED: \_\_March 24, 2022_____.

_____*Marco Hernandez*_____
MARCO A. HERNÁNDEZ
United States District Judge

19 – OPINION & ORDER